UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JAMAAL S. HUNT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:23-cv-00104-SEB-KMB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Jamaal Hunt pled guilty to possessing fentanyl with intent to distribute and is serving a ten-year prison sentence. Mr. Hunt asks the Court to vacate his guilty plea pursuant to 28 U.S.C. § 2255. For the following reasons, Mr. Hunt's motion is denied, and this action is dismissed with prejudice.

**I. The § 2255 Motion**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir.

2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Facts

Mr. Hunt's claims arise principally from a search of his person during a traffic stop and the Court's denial of a motion to suppress evidence obtained in that search.

### A. Traffic Stop and Search

Mr. Hunt was arrested following a traffic stop on January 18, 2021. Much of the incident was captured on camera. Dkt. 13.

Indiana State Trooper Randel Miller observed Mr. Hunt following a truck too closely. He pulled Mr. Hunt's car over and spoke to Mr. Hunt through an open passenger-side window. Mr. Hunt's car had Michigan license plates. In response to questions from Trooper Miller, Mr. Hunt said he was driving from Michigan to Florida.

Trooper Miller told Mr. Hunt he smelled a strong odor of marijuana through the open window. He asked Mr. Hunt to exit the car and join him in his patrol vehicle while he wrote a warning for the traffic violation. After Trooper Miller conducted a brief pat down, Mr. Hunt volunteered that he had recently been shot 17 times. In the patrol vehicle, Mr. Hunt told Trooper Miller that he was traveling to Florida for his cousin's funeral and that his cousin died of a drug overdose.

Trooper Miller called in Mr. Hunt's license plate number over his radio, then told Mr. Hunt he would be searching the vehicle due to the smell of marijuana. Trooper Miller said, "If you've got personal use in there, I'll work with you." He then informed Mr. Hunt of his rights to remain silent and to refrain from answering any questions without an attorney present. Trooper Miller asked Mr. Hunt how much marijuana he had in the car. Mr. Hunt asked if he could retrieve the

marijuana for Trooper Miller. Trooper Miller directed Mr. Hunt to "[j]ust tell me where it's at," and Mr. Hunt told Trooper Miller there were two joints in a bag in the back seat. Trooper Miller asked Mr. Hunt about his criminal record and whether there was a gun or any other drugs in the car. Mr. Hunt answered that he had a prior felony conviction for being involved in a fight and denied the presence of any other drugs or weapons.

The video does not capture the search or anything taking place afterward. In a probable cause affidavit, Trooper Miller wrote that he found what appeared to be two marijuana cigars in the car. He did not locate any other drugs, but he also did not see clothing or shoes that he would expect someone to wear to a funeral. Based on this, he suspected Mr. Hunt was not actually driving to a funeral and had answered his questions dishonestly. Dkt. 12-1 at 3.

Trooper Miller asked Mr. Hunt to step out of the patrol vehicle and conducted a more thorough pat down. He felt a hard object between Mr. Hunt's legs. After cuffing Mr. Hunt's hands behind his back, he extracted a plastic bag from Mr. Hunt's underwear, and tests later confirmed that the substance in the bag was fentanyl. *Id.* at 3–4.

**B.     Charges and Motion to Suppress**

In February 2021, Mr. Hunt was charged with possessing "40 grams or more of fentanyl with intent to distribute and with having a previous conviction for a serious violent felony. Crim. dkt. 12.[1] In June 2021, Mr. Hunt retained attorney Patrick Renn. Crim. dkt. 31. Two months later, the government obtained a superseding indictment adding that Mr. Hunt was previously convicted of a serious violent felony, such that his mandatory minimum prison sentence was ten years. Crim. dkt. 32; 21 U.S.C. § 841(b)(1)(B)(vi).

---

[1] *United States v. Hunt*, No. 4:21-cr-00002-SEB-VTW-1.

Before Mr. Renn entered the case, the Court ordered that any pretrial motions—including motions to suppress evidence—must be filed within 30 days after the appearance of counsel. Crim. dkt. 20 at 9. Mr. Renn did not file a motion to suppress evidence within 30 days of his appearance.

On September 9, 2021, the government moved to continue the October 4 trial date. Crim. dkt. 45. Mr. Hunt, through Mr. Renn, opposed the motion, asserting his right to a speedy trial. Dkt. 46. The Court granted a three-week continuance on September 21, setting a new trial date of October 25. Crim. dkt. 47.

Mr. Renn filed a motion to suppress evidence obtained during the traffic stop on October 11—months after the original deadline and only two weeks before the new trial date. Crim. dkt. 48. The Court denied the motion on October 19 exclusively on grounds that it was untimely. Crim. dkt. 56.

C.     **Guilty Plea and Sentence**

On October 20, Mr. Hunt petitioned the Court to plead guilty without the benefit of an agreement. Crim. dkt. 58. On October 21, the Court accepted Mr. Hunt's guilty plea at a hearing. Crim. dkt. 83.

During the hearing, counsel for the government proffered the facts that it would prove at trial. *Id.* at 22:4–23:11. Mr. Hunt admitted that those facts were true. *Id.* at 24:18–25:2. They included that Trooper Miller smelled marijuana from outside Mr. Hunt's car. *Id.* at 22:9–12. The Court entered the minimum sentence of 120 months following a hearing in March 2022. Dkt. 85.

### III. Analysis

**A.      Failure to Record Proceedings**

A technological failure prevented the Court from electronically recording Mr. Hunt's preliminary hearing and his detention hearing. Crim. dkt. 57. Accordingly, those hearings could never be transcribed.

Mr. Hunt asserts that he "could not prepare for trial" without transcripts of those proceedings and that his guilty plea must be vacated as a result. Dkt. 1 at 4. The government responds that Mr. Hunt procedurally defaulted this claim by failing to raise it during the pendency of the criminal case or on direct appeal. Dkt. 12 at 28–32.

The failure to record these two early proceedings does not warrant relief under § 2255. As an initial matter, "collateral relief is not available when all that is shown is a failure to comply with the formal requirements of" a procedural rule. *Hill v. United States*, 368 U.S. 424, 429 (1962); *see also* Fed. R. Crim. P. 5.1(g) (requiring courts to record preliminary hearings). That is all Mr. Hunt alleges here.

Regardless, if failure to record the early proceedings supported the type of substantive claim that can be remedied under § 2255, it is indeed procedurally defaulted in this case. "Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Hale v. United States*, 710 F.3d 711, 713–14 (7th Cir. 2013); *Massaro v. United States*, 538 U.S. 500, 504 (2003)). Constitutional claims may be raised for the first time in a collateral attack if the petitioner can show cause for the procedural default and prejudice from the failure to appeal. *Massaro*, 538 U.S. at 504. If a petitioner is unable to demonstrate both cause and prejudice, he may obtain habeas review only if he can persuade the

5

court that the dismissal of his petition would result in a fundamental miscarriage of justice—that is, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

If Mr. Hunt could articulate good cause for failing to raise this issue sooner, he has not demonstrated prejudice. Mr. Hunt states conclusively that he could not prepare for a trial without these transcripts. He does not, however, explain what information he would expect to have found in the transcripts, how it would have helped him prepare his defense, or how it would have led to a different outcome. Additionally, Mr. Hunt has not attempted to demonstrate actual innocence. He does not contest the truthfulness of his guilty plea to possessing 40 grams or more of fentanyl with intent to distribute it. Accordingly, Mr. Hunt cannot avoid procedural default.

**B.     Ineffective Assistance**

Mr. Hunt next argues that he was deprived of his Sixth Amendment right to effective assistance from counsel both by Mr. Renn and by Brian Darling, who preceded him on the case.

A § 2255 movant claiming ineffective assistance bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021).

It is fundamental that the § 2255 movant faces the burden of demonstrating both deficient performance and prejudice. *See, e.g.*, *Williams v. United States*, 879 F.3d 244, 249 (7th Cir. 2018) ("To demonstrate prejudice, Williams had the burden to show a reasonable probability" of a different outcome "but for the failure by his counsel."). "Only if the petitioner comes forward with 'specific acts or omissions of his counsel that constitute ineffective assistance'" does the Court "consider 'whether these acts or omissions were made outside the wide range of professionally

6

competent assistance.'" *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (quoting *Berkey v. United States*, 31789 F.3d 768, 772 (7th Cir. 2003)).

A guilty plea "cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel." *Hurlow v. United States*, 726 F.3d 958, 967 (7th Cir. 2013). A petitioner who has pled guilty can establish prejudice only by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). For this reason, "[t]he nature of relief secured by a successful collateral challenge to a guilty plea [is] an opportunity to withdraw the plea and proceed to trial." *Padilla v. Kentucky*, 559 U.S. 356, 372–73 (2010).

### A. Mr. Darling: Failure to Convey Offer to Plead Guilty

Mr. Hunt first alleges that he wrote Mr. Darling a letter in May 2021 offering to plead guilty if the government would stipulate to sentencing calculations that would leave him with an advisory sentence of 46–57 months. Dkt. 1 at 7. He alleges that Mr. Darling never forwarded that offer to the government. *Id.*

It is well-settled that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). But that duty flows in only one direction. The Court is aware of no authority—and Mr. Hunt offers none—obligating defense counsel to convey to the government every self-serving plea agreement proposed by the defendant. To the contrary, it is fundamental that the "government is not required to offer any defendant" a favorable plea bargain. *Delatorre*, 847 F.3d at 846.

To the extent Mr. Hunt alleges more broadly that Mr. Darling performed deficiently by failing to communicate with him, he does not identify any resulting prejudice. In short, there is no

7

basis for the Court to find that Mr. Darling deprived Mr. Hunt of his Sixth Amendment right to effective assistance.

**B.     Mr. Renn: Failure to Move to Suppress Evidence**

Mr. Hunt alleges that he instructed Mr. Renn immediately after retaining him to convey to the government that he would plead guilty if the government would stipulate to a five-year sentence. Dkt. 1 at 5–6. He alleges that Mr. Renn failed to convey that offer, which prejudiced him because the government obtained a superseding indictment two months later that increased the mandatory minimum sentence. *Id.* As with Mr. Darling, there is no legal basis to determine that Mr. Renn performed deficiently or prejudiced Mr. Hunt by failing to convey a favorable plea offer to the government.

Mr. Hunt also argues that Mr. Renn performed deficiently by failing to timely move to suppress the evidence obtained during the traffic stop. However, as the government correctly argues, Trooper Miller's search of Mr. Hunt's person was a lawful search incident to arrest. Therefore, even a timely motion would have failed on the merits. Accordingly, there is no basis for finding prejudice.

Mr. Hunt first argues that there was no lawful basis for pulling him over. "Traffic stops are seizures, so they must be reasonable under the circumstances." *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021). This means that the detaining officer must have "reasonable suspicion of a traffic violation—not probable cause." *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021). The government has offered pictorial evidence of Mr. Hunt following closely on the bumper of a semi-truck. Dkt. 12 at 20. Mr. Hunt does not dispute the accuracy or authenticity of the pictures. These pictures undeniably support a finding that Trooper Miller had reason to suspect Mr. Hunt of a traffic violation. *See* Ind. Code § 9-21-8-14(b) ("A person who drives a motor vehicle may not

8

follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of both vehicles, the time interval between vehicles, and the condition of the highway.").

"Warrantless searches are *per se* unreasonable under the Fourth Amendment unless one of few recognized exceptions applies." *United States v. Leo*, 792 F.3d 742, 748 (7th Cir. 2015). One recognized exception is a search incident to a lawful arrest: "If an officer has probable cause to arrest, she also may conduct a search incident to that lawful arrest without any additional justification." *United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017).

Trooper Miller developed probable cause to arrest Mr. Hunt the moment he smelled marijuana outside the car window: "the odor of marijuana, if sufficiently localized to a specific person, provides probable cause to arrest that person for the crime of marijuana possession." *Id.* There is no dispute that Trooper Miller smelled marijuana. Mr. Hunt was the only occupant of the car. By law, Trooper Miller had probable cause to arrest Mr. Hunt.

After being informed of his right to remain silent, Mr. Hunt told Trooper Miller that he had two marijuana cigarettes in the car. Trooper Miller then searched the car and actually found the marijuana. This only strengthened Trooper Miller's probable cause to arrest Mr. Hunt.

After searching the car, Trooper Miller placed Mr. Hunt in handcuffs and patted him down. At that point, Mr. Hunt was the subject of a lawful, custodial arrest, and that authorized Trooper Miller to search his person for contraband or weapons. *United States v. Robinson*, 414 U.S. 218, 235–36 (1973).

Had Mr. Renn filed his motion to suppress timely, it would have failed on the merits. As such, Mr. Hunt was not prejudiced.

## IV. Conclusion

Mr. Hunt's 28 U.S.C. § 2255 motion is **denied**. This action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** in this case, to docket a copy of this order in the criminal case, 4:21-cr-00002-SEB-VTW-1, and to **terminate** the pending § 2255 motion in the criminal case, crim. dkt. [88].

## V. Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Hunt has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 9/25/2025

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMAAL S. HUNT
27503-509
GREENVILLE - FCI
GREENVILLE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 5000
GREENVILLE, IL 62246

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov